UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THAI LE, <br><br> Plaintiff, <br><br> v. <br><br> DILIGENCE, INC. and NICE GLIDE FISHING LLC, <br><br> Defendants. | Civil Action No. 13-12247-FDS |

ORDER ON PLAINTIFF'S MOTION TO COMPEL A SECOND 30(B)(6) DEPOSITION
AND TO COMPEL THE PRODUCTION OF PHOTOGRAPHS (#48)

December 9, 2015

KELLEY, U.S.M.J.

This case concerns injuries suffered by Plaintiff Thai Le on March 19, 2013 while he was employed by Defendant Nice Glide, Inc., as a crew member aboard the F/V DILIGENCE, a scallop vessel owned and operated by Defendant Diligence, Inc. Plaintiff has filed a Motion to Compel a second deposition of Captain Scott Larsen ("Captain Larsen") and the production of fourteen photographs of the F/V DILIGENCE taken on March 21, 2013. (#48.)

On July 8, 2014, Plaintiff propounded interrogatories and document requests on both Defendants requesting, among other things, maintenance records of the F/V DILIGENCE. (#49, exh. A, B, D, E.) On August 29, 2014, Defendants responded jointly with 65 pages of documents. On March 25, 2015, Plaintiff took the deposition of Captain Larsen, as the 30(b)(6) designee of both Defendants. Plaintiff subsequently learned more information about the

condition of the "wind station"[1] aboard the vessel at the time of the incident. (#49 at 5-6.) On September 1, 2015, after prompting by Plaintiff to supplement discovery, Defendants produced an additional 1,089 responsive documents relating to maintenance of the vessel during the relevant time period. (#49 at 6, exh. H.) These records indicated that the wind station may have been removed from the F/V DILIGENCE in 2012, and replaced in 2014 after Plaintiff's injury. Based on that newly-revealed discovery and facts gleaned from other depositions, Plaintiff now seeks to conduct a second 30(b)(6) deposition of Captain Larsen.

Plaintiff also seeks fourteen photographs of the F/V DILIGENCE taken by Defendants on March 21, 2013, two days after Plaintiff's injuries. (#48 at 10-11, #51 at 9.) These photographs show the condition of the vessel at the time of the incident, before later structural changes were made. (#48 at 11.) Defendants object to both requests, on grounds that a second deposition would be "unreasonably cumulative and duplicative," and that the photographs fall into the work-product exception to the discovery rules. (#51 at 3, 7-8.) After careful consideration of the applicable law and the parties' filings, the Court makes the following findings.

I. Deposition

A party who wishes to depose a person more than once must seek and obtain prior leave of court, absent the parties' written stipulation. Fed. R. Civ. P. 30(a)(2)(A). Although the decision is discretionary, courts have generally allowed re-opening a deposition where, as here, new information is unearthed only after the initial deposition. *See, e.g., Quality Aero Tech., Inc. v. Telemetrie Elektronik GmbH*, 212 F.R.D. 313, 319 (E.D.N.C. 2002) (allowing second 30(b)(6) deposition, finding that "newly-discovered information [is]… sufficient for a finding of good cause under Rule 30"), *Dixon v. Certainteed Corp.,* 164 F.R.D. 685, 692 (D. Kan. 1996) (second

---

[1] The parties also refer to this device as a "weather station," "weather sensor," "wind gauge," and "anemometer." For purposes of this motion, these terms are considered to be interchangeable.

deposition warranted where plaintiff was unaware of, and thus could not inquire about, statements in the first deposition), *and Keck v. Union Bank of Switzerland*, No. 94- 4912, 1997 WL 411931, at *1 (S.D.N.Y. July 22, 1997) ("a second deposition is often permitted, where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition"). Here, Defendants failed to disclose the maintenance invoices concerning the wind station until one year after their initial discovery response, when pressed by Plaintiff to supplement. Defendants have provided no reason for the delayed disclosures, and it is only fair that Plaintiff should not be penalized for their lack of promptness.

Defendants have argued that a second deposition would be cumulative and duplicative because Plaintiff's counsel questioned Captain Larsen about the wind station during the first deposition. The transcripts provided show the following line of questioning:

> Q: Do you have one of those wind gauges?
> A: I do.
> Q: Do you ever use it?
> A: I do, yeah.
> Q: Do you remember whether – was that typically how you figured out what the wind outside, or would you more do it by feel?
> A: Well, yeah, I look at that, but it's not in a position where I see it all the time, and I don't even know how accurate it is, but – well, I do have a wind gauge on the boat though. I'm sure I looked at it, you know, but that might have been where I came up with the 25 [knots estimate], you know.
> Q: Typically would you come up – like typically would you look at the wind gauge or –
> A: Yeah.
> Q: Do you think you probably did look at the wind gauge?
> A: I think I did.

(#51, exh. 3 at 117.) This is the entire extent of the wind station discussion. At the time of this deposition, Plaintiff's counsel did not have access to the maintenance invoices provided in Defendants' supplemental discovery response. He was unaware "a) that the weather sensor malfunctioned and was removed in 2012, b) that a new upgraded weather sensor was installed

3

after the accident in 2014 or c) that within a month after the accident a technician may have performed work on the electronic connection between the weather sensor and the display in the wheelhouse," and therefore could not question Captain Larsen about these topics. (#49, exh. I.) Because none of these topics were covered previously, allowing a second deposition to probe Captain Larsen's knowledge of the wind station would not be cumulative or duplicative.

Defendants have also asked the Court to limit the deposition in "time, location, and scope of inquiry." (#51 at 6.) Plaintiff has already offered to accommodate Captain Larsen by allowing him to choose the location of the deposition in New Bedford or Florida, and limiting the deposition topic to "the weather sensor device on the F/V DILIGENCE." (#49, exh. O.) Although Fed. R. Civ. P. 31(d) generally limits depositions to 7 hours, it also provides that "[t]he court must allow additional time… if needed to fairly examine the deponent…" Because the second deposition is necessitated by the newly-revealed documents and information, the Court finds that more time is warranted.

II.     Photographs

Defendants assert that the photographs were taken in anticipation of litigation, and are therefore exempt from discovery as work product. This is a federal question case, so the federal common law of privilege applies. Fed. R. Evid. 501, *and see In Re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003). Defendants, who are invoking the privilege, bear the burden of establishing that the privilege applies. *State of Maine v. United States Dep't of the Interior*, 298 F.3d 60, 71 (1st Cir. 2002). The work-product doctrine, codified in Fed. R. Civ. P. 26(b)(3), is intended to preserve a "zone of privacy" within which a lawyer can prepare and develop legal theories and strategy "with an eye toward litigation." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947); *United States v. Textron, Inc. and*

4

*Subsidiaries*, 577 F.3d 21, 25 (1st Cir. 2009). Documents and tangible things prepared by or for a party or its representative, in preparation for trial or in anticipation of litigation, are not discoverable absent a showing of substantial need, undue hardship, and inability to obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3).

Here, the photographs meet the work-product criteria of Rule 26(b)(3), as they are tangible things prepared in anticipation of litigation by Defendants or their agents. (#51 at 9-10.) However, because Plaintiff has shown substantial need for the photographs and no means of obtaining equivalent images, they fall under the exemption in Rule 26(b)(3)(A)(ii). "Courts have generally allowed discovery of photographs and diagrams which were made at the time of an accident because of the inherent inability of a party to reproduce these materials… Photographs which are taken at the scene long after the occurrence of the accident may not be the substantial equivalent of photographs which were taken at an earlier date." *Reedy v. Lull Eng'g Co.*, 137 F.R.D. 405, 407 (M.D. Fla. 1991) (internal citations omitted). This is especially true here, where the vessel and wind station have been altered significantly since the incident, so that Plaintiff cannot simply take photographs today. (#49 at 11.) Plaintiff has also requested the insurance survey photographs from the relevant years, but none are available. (#49 at 12.) There does not appear to be any other means for him to access photographs of the vessel as it appeared in March 2013.

The facts here are also similar to other cases involving substantial injuries. *See, e.g., Trejo v. Alter Scrap Metal, Inc.*, No. 08-257, 2009 WL 2634485, at *1 (S.D. Miss. Aug. 24, 2009) (photographs discoverable where plaintiff's head injuries meant that he had no memory of the event and could not communicate his recollection of the scene), *and Martinsen v. Lykes Bros. Steamship Co.*, No. 86-1514, 1987 WL 6692, at *2 (E.D. Pa. Feb. 12, 1987) (plaintiff could not

have obtained contemporaneous photographs of accident scene because he left vessel shortly after his injuries and had no right to re-board until filing suit). Here, Plaintiff has no memory of the incident, was airlifted off the vessel to receive medical care, and suffered a severe traumatic brain injury. (#49 at 2.) The photographs may help to fill in the information missing from Plaintiff's recollection.

Defendants have included an affidavit from counsel asserting that none of the photographs show a location where the wind station would have been visible. (#51, exh. 7.) However,

> A verbal description of a given area cannot substitute for photographs of the location. The description may omit relevant information such as whether certain signs were posted or whether certain items were present. Further, an expert may be unable to reach conclusions that may be of aid to the jury as to the composition of materials and construction at the location from incomplete verbal descriptions. Finally, a picture is certainly worth a thousand words to a jury, as well as to witnesses who may be unable to separate their recollection of the site as it appeared then from the present appearance of the site.

*Zoller v. Conoco, Inc.*, 137 F.R.D. 9, 10 (W.D. La. 1991). Giving full credit to defense counsel's assurances that the photographs do not show the presence or absence of the wind station, there may be other valuable information that Plaintiff could gain from viewing them. Plaintiff may be able to use the photographs to question witnesses, to seek expert opinions, or to pursue alternate theories of his case. Because the photographs are necessary to depict the condition of the vessel at the time of the incident, and are otherwise unavailable, Defendants must produce them.

   III.   Conclusion

For the reasons above, Plaintiff's Motion to Compel a second 30(b)(6) deposition and production of the photographs is GRANTED. The parties are to conduct the deposition at a mutually convenient time and location before the close of discovery, and limit the deposition to not more than two (2) hours on topics relating to the installation, maintenance, and function of

the wind station on the F/V DILIGENCE. Defendants are further ORDERED to produce the photographs within ten (10) days of this order.

December 9, 2015.                    /s/ M. Page Kelley
                                                    M. Page Kelley
                                                    United States Magistrate Judge